WILLIAMS *v.* CHATTANOOGA IRON WORKS.

(*Jackson.*   April Term, 1915.)

1. **DAMAGES.**   Proceedings for assessment.   Physical examination of person injured.   Power of court.

The trial court has the right at common law to compel plaintiff, suing for·a personal injury, to submit to a physical examination by a physician.   (*Post, pp.* 688-694.)

Cases cited and approved:   Railroad v. Childress, 82 Ga., 719; Railroad v. Hill, 90 Ala., 71; Graves v. Battle Creek, 95 Mich., 266; Hall v. Manson, 99 Iowa, 698; O'Brien v. La Crosse, 99 Wis., 421; Lane v. Railroad, 21 Wash., 120; Wanek v. Winona, 78 Minn., 98; South Bend v. Turner, 156 Ind., 418; Railroad v. Palmore, 68 Kan., 554; Manufacturing Co. v. Schoeninger, 42 Colo., 362; Johnston v. Railroad, 150 Cal., 542; Murphy v. Railroad, 31 Nev., 141; Railroad v. Hill, 36 Okla., 540; Brown v. Railroad, 12 N. D., 69; Bagwell v. Railroad, 109 Ga., 612; Wittenberg v. Onsgard, 78 Minn., 342; McQuigan v. Railroad, 129 N. Y., 50; Lyon v. Railroad, 142 N. Y., 298; State, ex rel., Carter v. Call, 64 Fla., 144.

Cases cited and disapproved:   Parker v. Enslow, 102 Ill., 272; Stack v. Railroad, 177 Mass., 157; Railroad v. Cluck, 97 Tex., 176; May v. Railroad, 32 Mont., 529; Larson v. Salt Lake City, 34 Utah, 321; Railroad v. Botsford, 141 U. S., 250; Railroad v. Anglin, 99 Tex., 349.

2. **DAMAGES.**   Physical examination of person injured.   Application for examination.

An application to the court for a physical examination by a physician of plaintiff, suing for a personal injury, must be made before trial and supported by affidavit, setting forth facts showing that an examination is necessary and can be had without danger to plaintiff or any serious pain.   (*Post, pp.* 694, 695.)

3. APPEAL AND ERROR. Questions reviewable. Buildings on application for examination of plaintiff suing for personal injury.

A decision of the court on an application for a physical examination by a physician of plaintiff, suing for a personal injury, is reviewable on appeal. (*Post, pp.* 694, 695.)

4. DAMAGES. Physical examination of person injured. Mode of examination.

The court ordering an examination by a physician of plaintiff, suing for a personal injury, must select a physician competent and indifferent between the parties. (*Post, pp.* 695, 696.)

5. DAMAGES. Physical examination of person injured. Proceedings to procure examination.

The court, ordering an examination by a physician of plaintiff, suing for a personal injury, must fix in advance the fee for the examination, and require defendant, making the application, to pay the sum into court, to be paid to the physician when he files his report. (*Post, pp.* 695, 696.)

6. DAMAGES. Physical examination of person injured. Report of examination.

A physician, appointed by the court to examine plaintiff, suing for a personal injury, must file a report, stating in detail the results of his examination, and the report should be open to inspection of counsel of both parties, but not for use as evidence, except for cross-examination of the physician when introduced as witness at the trial. (*Post, pp.* 695, 696.)

7. DAMAGES. Physical examination of person injured. Mode of examination.

A physician, examining a plaintiff suing for a personal injury, must preserve, as far as possible, the privacy of plaintiff's person; and, in case a woman is plaintiff, the physician should be a female, if one is accessible. (*Post, p.* 696.)

Williams v. Iron Works.

8. **DAMAGES. Physical examination of person injured. Mode of examination.**

Where a physician, appointed by the court, examines plaintiff, suing for personal injury, plaintiff's own physician should be permitted to be present at the examination on plaintiff's application therefor.   (*Post, p.* 696.)

9. **DAMAGES. Physical examination of person injured. Refusal to submit to examination. Effect.**

A plaintiff, suing for a personal injury, cannot be compelled to submit to an examination by a physician appointed by the court by proceedings in contempt, but he is offered the alternative of a reasonable examination or of having his suit dismissed.   (*Post, p.* 696.)

10. **PLEADINGS. Bill of particulars. Right of defendants to demand.**

A defendant, when sued by plaintiff for a personal injury, can require of plaintiff a bill of particulars, showing in reasonable detail the nature and effect of the injuries complained of.   (*Post, . p.* 696.)

Cases cited and approved:   May .v. Railroad, 129 Tenn., 521; Curtain v. Railroad, 65 App. Div., 610; Cavanagh v. Railroad, 70 App. Div., 1; O'Neill v. Railroad, 87 App. Div., 556; Bogard v. Railroad, 3 Ann. Cas., 162.

11. **PLEADING. Bill of particulars. Right of court to order.**

The court, in requiring plaintiff, suing for a personal injury, negligently inflicted, to furnish a bill of particulars, should exercise great caution, and thereby not impose on plaintiff the duty to furnish specifications which may embarrass him on the trial; and this is especially true where plaintiff sues in a representative capacity, as in action for death by wrongful act.   (*Post, pp.* 696, 697.)

12. **DAMAGES. Physical examination of the person injured. Refusal of plaintiff to submit to examination. Trial.**

Refusal of plaintiff suing for a personal injury to submit to a physical examination by a physician may be proved on the trial,

and commented on in argument before the jury, in case no application for an examination is made to and acted on by the court.  (*Post, pp.* 697, 698.)

13.  **DAMAGES.  Physical examination of person injured.    Orders for examination.**

The court, ordering an examination, by a physician appointed by it, of plaintiff suing for a personal injury, must safeguard the rights of plaintiff, and it must affirmatively appear that the precautions due plaintiff were exercised by the trial court; and plaintiff, complaining of an order for examination, need not point out deficiencies therein.  (*Post, p.* 698.)

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—A. B. PITTMAN, Judge.

I. H. PERES and R. E. KING, for plaintiff.

BROWN & ANDERSON, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff filed his declaration on the 21st day of September, 1914, alleging that by the negligence of the defendant, the Chattanooga Iron Works, he was injured in the following manner:  That is to say, while assisting in the insertion of a rivet in some metal sheeting, he

was struck in the eye by the rivet, by means of which that eye was seriously and permanently injured, and that, as a result thereof, the other eye had also become affected; likewise that other parts of his body were injured. On the 26th of September, the defendant filed its plea of not guilty.

On the 16th of November the defendant moved the court—

"to order a physical examination to be made of the plaintiff by expert physicians and oculists, to be appointed by the court, for the purpose of determining whether or not the injuries claimed by the plaintiff to have been inflicted upon his eyes exist."

The motion continues:

"The defendant shows that the injuries complained of are latent, and not perceptible to experts, and that the ends of justice require that the defendant be advised to what extent, if any, the eyes or sight of the plaintiff have been injured. The defendant offers and agrees to pay the fees and charges made by the experts for making such examination."

The motion was not supported by affidavit or evidence of any kind.

On this motion the trial court—

"ordered that Dr. E. C. Ellett, a physician selected by the court, be appointed to make such examination, the costs of which will be paid by the defendant, the Chattanooga Iron Works. It is further ordered that the plaintiff, C. P. Williams, do present himself at the office of said Dr. E. C. Ellett, No. 1722 Exchange Building,

on Saturday, December 5, 1914, at ten o'clock a. m., and there submit to such reasonable physical examination by said physician as may be deemed necessary by him to determine the condition of plaintiff's eyes and vision."

Thereupon the plaintiff—

"excepted to the action of the trial judge in ordering him to submit his person to a physical examination, and denied the power of the court to order such examination under the existing circumstances, and declined to submit to same, and defendant moved in open court that the suit be dismissed; whereupon the court dismissed his suit, to which he excepted and prayed an appeal," etc.

Pursuant to the appeal the record was transmitted to the court of civil appeals, and there the judgment of the trial court was reversed, and the cause remanded for further proceedings. The case was then brought to this court by the writ of *certiorari.*

The learned court of civil appeals held that the right to direct the examination existed in the trial court, but that the order was not sufficiently specific in the way of protecting the plaintiff from oppression.

In this court the order is objected to by the plaintiff on the same grounds, and also the power of the court to grant such an order at all is challenged.

The first question therefore is whether the trial court had the right to order a physical examination of the plaintiff to be made, or rather, stating the question in its most general form, whether a trial court has the

right to compel the physical examination of a plaintiff suing for personal injuries.

The subject has received extensive examination in a series of cases in this country. The power is affirmed in the following jurisdictions: Alabama, Arkansas, California, Colorado, Georgia, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Nevada, Ohio, Oklahoma, North Dakota, Washington, and Wisconsin. It is authorized by statute in New York, New Jersey, and Florida. It is denied in Illinois, Montana, South Carolina, Utah, Texas, and in the supreme court of the United States. We shall not refer directly to cases from all of these jurisdictions, but they will be found cited in the text and notes of the following cases, which are readily accessible everywhere. These cases adequately discuss the question, viz.: *Richmond & D. R. Co.* v. *Childress,* 82 Ga., 719, 9 S. E., 602, 3 L. R. A., 808, 14 Am. St. Rep., 189; *Alabama & G. S. R. Co.* v. *Hill,* 90 Ala., 71, 8 South., 90, 9 L. R. A., 442, 24 Am. St. Rep., 764; *Graves* v. *Battle Creek,* 95 Mich., 266, 54 N. W., 757, 19 L. R. A., 641, 35 Am. St. Rep., 561; *Hall* v. *Manson,* 99 Iowa, 698, 68 N. W., 922, 34 L. R. A., 207; *O'Brien* v. *La Crosse,* 99 Wis., 421, 75 N. W., 81, 40 L. R. A., 831; *Lane* v. *Spokane Falls & N. R. Co.,* 21 Wash., 120, 57 Pac., 367, 46 L. R. A., 154, 75 Am. St. Rep., 821; *Wanek* v. *Winona,* 78 Minn., 98, 80 N. W., 851, 46 L. R. A., 448, 79 Am. St. Rep., 354; *South Bend* v. *Turner,* 156 Ind., 418, 60 N. E., 271, 54 L. R. A., 396, 83 Am. St. Rep., 200; *Atchison, T. & S. F. R. Co.* v. *Palmore,* 68 Kan., 554, 75 Pac., 509,

64 L. R. A., 90, 93; *Western Glass Mfg. Co.* v. *Schoeninger*, 42 Colo., 362, 94 Pac., 342, 15 L. R. A. (N. S.), 663, 126 Am. St. Rep., 165; *Johnston* v. *Southern Pacific R. Co.*, 150 Cal., 542, 89 Pac., 348, 11 Ann. Cas., 841; *Murphy* v. *Southern Pac. R. Co.*, 31 Nev., 141, 101 Pac., 322, 21 Ann. Cas., 502; *Chicago, R. I. & P. R. Co.* v. *Hill*, 36 Okla., 540, 129 Pac., 13, 43 L. R. A. (N. S.), 622; *Brown* v. *Chicago, M. & S. P. R. Co.*, 12 N. D., 69, 95 N. W., 153, 102 Am. St. Rep., 564. Cases on the affirmative side of the question, making important distinctions, are *Bagwell* v. *Atlanta Consolidated Street Railway Co.*, 109 Ga., 612, 34 S. E., 1018, 47 L. R. A., 487, and *Wittenberg* v. *Onsgard*, 78 Minn., 342, 81 N. W., 14, 47 L. R. A., 141. A decision of the New York court of appeals prior to the passage of the act in that State authorizing an examination is *McQuigan* v. *Delaware, L. & W. R. Co.*, 129 N. Y., 50, 29 N. E., 235, 14 L. R. A., 466, 26 Am. St. Rep., 507. A decision of that court subsequent to the act is *Lyon* v. *Manhattan R. Co.*, 142 N. Y., 298, 37 N. E., 113, 25 L. R. A., 402. A decision of the supreme court of Florida subsequent to the passage of the act in that State is *State, ex rel. Carter*, v. *Call*, 64 Fla., 144, 59 South., 789, 41 L. R. A. (N. S.), 1071.

Some of the cases from the States in opposition are: *Parker* v. *Enslow*, 102 Ill., 272, 40 Am. Rep., 588; *Stack* v. *New York, N. H. & H. R. Co.*, 177 Mass., 157, 58 N. E., 686, 52 L. R. A., 328, 83 Am. St. Rep., 269; *Austin & N. W. R. Co.* v. *Cluck*, 97 Tex., 176, 77 S. W., 403, 64 L. R. A., 496, 104 Am. St. Rep., 863, 1 Ann. Cas., 261.; *May* v. *N. W. P. R. Co.*, 32 Mont., 529, 81 Pac., 328, 70 L. R.

A., 114, 4 Ann. Cas., 605; *Larson* v. *Salt Lake City,* 34
Utah, 321, 97 Pac., 483, 23 L. R. A. (N. S.), 462; *Union
Pac. R. Co.* v. *Botsford,* 141 U. S., 250, 11 Sup. Ct., 1000,
35 L. Ed., 734. These cases give a full view of the
grounds on which the opposition to the practice is
founded. It is conceded, however, in the case last
cited, and also in *Austin & N. W. R. Co.* v. *Cluck,* that
the refusal of the plaintiff to consent to an examina-
tion is matter for pertinent comment to the jury; and
in *Houston & T. C. R. Co.* v. *Anglin,* 99 Tex., 349, 89 S.
W., 966, 2 L. R. A. (N. S.), 386, is considered under
what circumstances arises a waiver of the right to ob-
ject to an examination.

One of the chief questions discussed in the cases is
the basis of the right to make the examination. In
some it is insisted that it is a right inherent in the
courts for the purpose of effecting justice, and in those
which object to the right it is insisted that no such
power inheres in courts, and that it can be conferred
only by statute. It is denied in the negative cases that
such practice is recognized in the common law. In
many of the affirmative cases it is insisted that such
right does exist at common law. The weight of au-
thority is so great in favor of the right to order the
examination that we do not deem it necessary to go at
length into the reasons so fully discussed in the cases
which we have cited. We shall only add, on this branch
of the case, that we believe the right was exercised at
common law, although not in precisely the same way in
which it is practiced at this time.

At common law there was an old action known as an appeal of mayhem. There were several of these old actions, one called an appeal of death, another an appeal of larceny, another an appeal of rape, and the fourth an appeal of mayhem. It seems that ''an appeal'' in the sense in which it was used in these ancient actions was a party's private action, seeking revenge for the injury done him, at the same time prosecuting for the crown in respect of the offense against the public. 1 Bac. Abridg. 291. The nature of the action is best illustrated by the appeal of larceny. In the authority referred to it is said:

''An appeal of larceny is an action which a person robbed of goods may bring against the felon, in which there shall be a restitution of the goods, and the offender to suffer such punishment as if he were convicted at the suit of the king.''

That is, there was a combined action both for restitution and for punishment. Id. 292. An appeal of mayhem was for any hurt done to a man's person, whereby he was rendered less able in fighting to annoy others, or defend himself. Id. 293. The demand was set forth in a declaration, describing the offense with the greatest certainty, also showing in what part of the body the wound was given, in the case of mayhem. Id. 297. Later on in the same work (volume 9, p. 554) it is said:

''In an appeal of mayhem the court may, at the prayer of the defendant, try, upon inspection of the part, whether there be a mayhem. Bro. Appeal, pl. 46; Bro. Trial, pl. 57; 2 Hawk. P. C. ch. 23, section 27. As

the courts have a power, in case the defendant in an appeal of mayhem pray it, to try upon inspection of the part whether there be a mayhem, the plaintiff in an appeal must always appear in person, that the court may have an opportunity, in case it should be so tried, of inspecting the part. Bro. Trial, pl. 37; 2 Hawk. P. C. ch. 23, section 27. If, where the trial is by the court upon inspection, there be a doubt upon inspecting, the court has a power of requiring or receiving other evidence. 2 Roll. Abridg. 373, pl. 2. . . . If the court, upon inspecting the part in an appeal of mayhem, be doubtful whether there be a mayhem, a writ may be awarded to the sheriff, to return some able physicians and surgeons for the better information of the court. Bro. Appeal, pl. 46; Bro. Trial, pl. 57; 2 Hawk. Pl. C. ch. 23, section 27. . . . If the court, after having inspected, and receiving other evidence, be still doubtful, it has a power of refusing to determine the matter in question, and may send it to be tried by a jury. Bro. Trial, pl. 60.''

It seems that mayhem was also considered simply as a trespass (1 Bac. Abridg. 292), and might be redressed by an action of trespass. Id. vol. 6, p. 408. On this latter page it is said:

''If the declaration mention a mayhem, the court, upon view of the mayhem, may increase the damages given by the jury (1 Roll. 572, 1, 10, 15 R.; 1 Leo. 139), though the particular part subject to mayhem be not specified. R. Hard. 408. . . . So, in battery, where the manner of the battery is described, the court, upon view, may increase the damages. Per Hale, Hard. 408.

So the court may increase damages, upon view and examination of witnesses, where the declaration is general *quod maihemavit,* without making any description of the mayhem, if the judge of assize certify the particulars of the mayhem, or be in court and affirm, that the particulars, now proved, were given in evidence at the trial. 1 Sid. 108. But where the declaration does not mention a mayhem, nor describe the manner of the battery, the court cannot increase the damages upon view. Hard. 408.''

These excerpts seem to indicate an ancient practice of having a personal examination of an injured plaintiff, generally by the court, sometimes by the court and jury, generally without the aid of medical men, but sometimes with their aid. We here find what seems to us the germ of the present practice. It has been developed and extended in modern times like other law principles to meet the needs of the business transacted in modern courts.

In the cases cited which recognize the doctrine it is applied with great restraint, and with a careful attention to the rights of the plaintiff. He must first be asked to submit to an examination, and the court can be applied to only after his failure to consent. The application to the court must be made before the trial and so as not to create unnecessary delay. The examination cannot be ordered upon mere motion. The application should be supported by affidavit setting forth pertinent facts and reasons. The examination cannot be had merely to obtain cumulative evidence. It must be made

to appear that it is necessary in order that justice may be done to the defendant.  It should affirmatively appear that the examination can be made without danger to the plaintiff, or any serious pain.  Proper inquiries on these heads should be made by the trial judge before ordering the examination, and his conclusions should be written down in the order.  Being thus prepared for the proper exercise of his discretion, he may act, and either grant or disallow the application.  His decision is subject to review on appellate proceedings, and the revising court, being furnished with the grounds of his action, preserved in the record or by bill of exceptions, together with his conclusions and reasons therefor, will be able likewise to exercise an intelligent discretion, either in affirmance or reversal of the trial court's action.

If the application be granted, the plaintiff cannot be required to submit his body to the examination of a physician or surgeon selected by the defendant.  The physician or surgeon must be selected by the trial judge, and he must be one of competent skill, and indifferent between the parties.  And while the expense must be borne in the first instance by the defendant making the application, the fee should be fixed in advance, and paid into court, to be paid to the expert when he files his report.  The expert should file a report, stating in detail the result of his examination.  This report should be open to the inspection of counsel on both sides of the controversy, but not for use as evidence, except in cross-examination of such surgeon or

physician, in case he should be introduced as a witness at the trial by either of the parties.

In the conduct of the examination, the privacy of the plaintiff's person must be preserved as far as possible. In the case of a woman, there should be female physicians, if they are accessible. If application be made therefor the plaintiff's own physician should be permitted to be present at the examination.

The plaintiff cannot be compelled to submit to the examination by proceedings in contempt. He is offered the alternative of a reasonable compliance with the duty of exhibiting his injuries to proper persons selected by the court, or of having his suit dismissed. He is at liberty to refuse, and on dismissal of his suit for such refusal may, as was done in the present case, test the correctness of the action of the trial judge by appeal, writ of error, or other appropriate appellate proceedings.

We may add that the defendant, in cases of this character, need not act in the dark, and thus be disabled from presenting adequate grounds for the examination sought. He can require of the plaintiff a bill of particulars (*May* v. *Railroad,* 129 Tenn., 521, 527, 533, 167 S. W., 477, L. R. A., 1915A, 781), showing in reasonable detail the nature and effect of the injuries complained of (*Curtain* v. *Metropolitan St. R. Co.,* 65 App. Div. 610, 72 N. Y. Supp., 580; *Cavanagh* v. *Metropolitan St. R. Co.,* 70 App. Div., 1, 74 N. Y. Supp., 1107; *O'Neill* v. *Interburban St. R. Co.,* 87 App. Div., 556, 84 N. Y. Supp., 505). While it is true, as said in the note to *Bo-*

gard v. *Illinois Cent. R. Co.*, 3 Ann. Cas., 162, that generally great caution should be exercised by the court in requiring bills of particulars in actions of damages resulting from negligence, because it is often impossible for the plaintiff to know with any degree of precision what his proof will be, and in most cases of that kind the specification might embarrass him on the trial, and that this is especially true where the plaintiff sues in a representative capacity, as in actions for death by wrongful act, since he is ordinarily obliged to obtain his evidence and facts from sources other than his own personal knowledge, and that whenever such an application is made each case must turn upon its own facts in the granting or denial of the application, yet where a plaintiff is suing for injuries inflicted on his body, we can see no difficulty in his specifying the nature of his injuries, and as far as possible their extent, being aided, when deemed necessary by the expert knowledge of his own physician or surgeon who may have examined him. He is living, and bears the effect of the injury in his body, and is not at the disadvantage of one suing in a representative capacity.

We may further add that we see no objection to the practice mentioned in *Union Pac. R. Co.* v. *Botsford,* supra, and *Austin & N. W. R. Co.* v. *Cluck,* supra, to the effect that the request to plaintiff to submit to an examination by a physician or surgeon to be appointed by the court and his refusal may be proven on the trial, and commented on in argument before the jury; that is, in a case where no application for an examination is

made to and acted on by the court. It is more than probable that such requests will generally render unnecessary any contested application to the court.

In the case before us, few, if any, of the safeguards herein indicated as necessary appear to have been employed by the trial judge. We cannot therefore see that he properly exercised his discretion. This must affirmatively appear. It is insisted that specific objections should have been made in the trial court, pointing out any deficiencies in the prerequisites of the order, but we are not of that opinion. We think it should affirmatively appear that the precautions due the plaintiff were exercised by the trial judge before he was compelled to submit to a drastic order for examination on penalty of a dismissal of his suit.

It is apparent, therefore, that the court of civil appeals reached the right conclusion, and the judgment of that court must be affirmed, and the cause remanded for further proceedings.