C. C. STUBBLEFIELD

*v.*

HOT MIX PAVING COMPANY, Inc.

383 S.W.2d 44.

(*Nashville,* December Term, 1963.)

Opinion filed October 9, 1964.

Wyatt & Hickerson, Tullahoma and Fayetteville, Fred I. Womack, Fayetteville, for appellant.

Henry, McCord & Forrester, Tullahoma, for appellee.

18

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case brought under sec. 50-901 et seq., T.C.A. The employee appeals from the denial of a compensation award to him.

On the morning of June 28, 1962, the employee while performing his regular duties as President and General Manager of the Hot Mix Paving Company, Inc., and after loading some heavy equipment onto a lowboy and while loosening, with wrenches, a three-fourth inch copper tubing to stop an oil leakage on a grader, experienced a squeezing sensation in his chest, felt like he was smothering, became sick and started vomiting and had a severe pain in his chest. His condition was diagnosed by a local doctor as a heart attack or heart failure, and he was sent to a hospital.

The appellant had had high blood pressure for some years prior to this seizure. At the time of the seizure appellant was a large man, weighing approximately 230 pounds, and being six feet, one and one-half inches tall. At the time of the seizure he was doing the same type of work that he had done many times before. His local doctor diagnosed his case as ''a cardiac involvement,

probably an acute coronary occlusion of one of the vessels." This coronary occlusion was defined by this local doctor as "a blocking off of one of the arteries which supplies the muscles of the heart. The coronary artery, or one of its branches, to be specific."

After this seizure Mr. Stubblefield remained in the hospital for approximately two weeks and was advised by the doctor that he would have to lay off doing heavy work and was pronounced unable to do heavy work at that time and afterwards could only do supervisory work. At the time of this seizure the employee was forty-two (42) years old and had high blood pressure.

The trial judge in an excellent and exhaustive memorandum opinion reviewed the evidence and authorities, and, after reviewing the evidence, he concluded thus:

"Bearing in mind the weight of the testimony rule which is applicable in this cause, and therefore weighing the testimony just indicated, the Court is unable to escape the conclusion that such weight of testimony is against the petitioner in this cause. The Court tested the facts on the instant cause by similar proof in causes summarized herein and has been unable to conclude that the facts under consideration are as strong as any of those approved by the Supreme Court upon the issues under consideration.

"It seems a fair inference from the proof that the petitioner, C. C. Stubblefield, did not receive the disability which he now has as a result of the heart attack on June 28, 1962, but that he had said disability previous thereto. It seems inferable, also, that said heart attack on the date aforesaid did not contribute to or aggravate his preexisting disability so as to entitle

20

him to the recovery of benefits because of permanent total or permanent partial disability. It is quite true that under medical advice he is required to limit his activities, but the Court is convinced from the proof that such limitation would have been advisable prior to the heart attack of June 28, 1962. This conclusion in the opinion of the Court is strengthened by the proof that the petitioner had a good recovery, to which fact both doctors testified.

"Therefore, the petitioner is not entitled to recover benefits in this cause."

The above statement of the Chancellor is made after quoting certain statements and evidence of the doctor of the appellant and the doctor for the company. The doctor for appellant said that what the man was doing at the time "could have caused the attack, but I couldn't say so definitely." Then the testimony of a specialist in internal medicine, which includes the field of cardiology, is quoted. This doctor concludes that he could have had this heart attack whether he was doing this work or not and it was more or less coincidental.

■ There are some nine assignments of error, six of which complain of the court's findings as to the weight and a preponderance of the evidence. In this Court we do not weight and determine what the preponderance of the evidence is. Our only duty is to determine whether or not there is material evidence to support the finding of the trier of facts. Sec. 50-1018, T.C.A., provides in effect that cases arising under the Workmen's Compensation Law are reviewed by us as to the evidence merely to determine whether or not the fact findings of the trial judge are supported by any material evidence. *Atlas Powder Co. v. Leister,* 197 Tenn. 491, 274 S.W.2d 364.

██ In the Leister case the question was there raised, as is raised here, that the evidence preponderated against the finding of the trial judge. We concluded for reasons set forth in the Leister case that this was not our function. The trial judge determines the credibility of witnesses, and, if these witnesses testify as to material facts which the trial judge believes, we are bound thereby. Thus it is seen from the statements quoted from the Chancellor above that he concluded that the heart attack herein did not arise by reason of any injury to the employee but was something that would have happened anyway. There being material evidence to support this finding of the Chancellor, we must affirm.

██ It is next contended that the trial court erred in ordering the employee to go to Nashville for an examination by the specialist, Dr. Foreman. This assignment came about by a motion made on behalf of the company to have such an examination made, which was sustained by the Chancellor. The appellant in support of his argument that it was error on behalf of the Chancellor to order him to go out of Coffee County to Nashville for this examination is based primarily on our case of *Helfenberger v. Harriman Northeastern R. Co.*, 156 Tenn. 14, 299 S.W. 793, 794, and a case cited in that opinion in support of the opinion. The Court in the Helfenberger case concluded that the statute being contrary to the common law must be strictly construed so as not to impose upon the plaintiff any further obligation than is expressly required, and that it wasn't shown that it was necessary for this to be done, that is, for the man to go out of the county for an examination. At the time the Helfenberger case was decided the statute did not provide for the expenses of the employee to go out of the county or city for such an examination. Since that time the Leg-

islature has amended the statute, sec. 50-1004, T.C.A., so as to provide: "Whenever the nature of the injury is such that specialized medical attention is required or indicated and such specialized medical attention is not available in the community in which the injured employee resides, the injured employee can be required to go, at the request of and at the expense of the employer, to the nearest location at which such specialized medical attention is available. * * *"

■■ It is argued here that there were other doctors in the immediate locality that could have made this examination. The question of whether or not there were sufficiently specialized men in that immediate locality to make such an examination is a question for the trial court to determine, and when the trial court thus exercises his discretion and orders an examination made by a specialist out of the county this does not within itself constitute reversible error unless it is shown that this discretion has been abused. There is no showing to that effect here.

The basis of the holding in the Helfenberger case is shown by this statement from the case:

"The statute requires that the employer 'shall pay for the services of the physician making the examination at the instance of the employer.' *It does not provide that the employer shall pay the expenses of the employee, incurred in going to the place of examination.* The failure to make such provision indicates clearly that the Legislature did not intend that the employee should be required to go to a distant point for the examination, or to a point outside the county of his residence, or the county in which the action for compensation is brought." (Emphasis supplied.)

The statute having been amended, as above quoted, so that now the employer must pay such expenses clearly indicates that the Legislature had in mind when they amended the statute to cover these expenses and for the employer to pay them, and therefore the Helfenberger case is no longer the law in this State. Consequently, and insofar as this question is concerned by reason of the fact that the statute has been amended, the Helfenberger case is overruled.

The employer has a right to have the employee examined by a doctor or a physician of his choosing so long as he complies with the statute above quoted, that is, pays the expense of the employee, etc., for the very obvious reason of having his own physician determine whether or not he thinks the employee is injured as he claims. This then provides the evidence pro and con on behalf of the employee and employer for the trier of facts to weigh and reach his determination. See *Atlas Powder Co. v. Grant,* 200 Tenn. 617, 293 S.W.2d 180.

It is next very ably argued that the testimony of this Nashville doctor, Dr. Foreman, is not admissible because it is based on subjective findings. The argument is based upon the Court of Appeals case of *Gulf Refining Co. v. Frazier,* 15 Tenn.App. 662; *Nashville C. & St. L. Ry. Co. v. York,* 6 Cir., 127 F.2d 606; and *Higgins v. Steide,* 47 Tenn.App. 42, 335 S.W.2d 533. The reasoning set forth in these cases does not apply here, because any subjective statements that the employee made to this doctor actually would be made to serve his own ends if they are in any way hearsay or whatnot, which brings forth the rule in *Gulf Refining Co. v. Frazier,* supra, and others, because there the testimony was offered in behalf of the plaintiff and these hearsay or subjective

statements were held inadmissible because they were hearsay, but in the instant case we have just the opposite. The employer is not objecting to statements the man made in his own behalf but is relying upon their doctor's examination which is based on the employee's statements plus any objective findings that he made. Thus it is that the rule against hearsay or subjective statements of the patient is not applicable. For these reasons we must overrule this assignment likewise.

■■■ If the argument of the appellant was correct in many instances it would be simply no good at all for the employer under sec. 50-1004, T.C.A., to ask that the injured employee be examined by a physician of the employer's choosing, because the employee could effectively deprive the employer of any proof. We will take judicial knowledge of the fact that in most examinations by physicians there is a certain amount of subjective testimony necessary before they can actually make an objective finding and then their opinions are based on the combination of the two. From the patient giving a history of his past life and the injury plus the actual physical examination the doctor reaches his conclusion. Thus it is when the trier of facts has all of these things before him and reaches the conclusion that the statement of the doctor for the employer has reached the correct conclusion there is nothing that we of the appellate court can do about the matter. If we were sitting on the trial bench and heard this proof and saw these witnesses that is one thing, but when we merely see the record as it is in a typewritten or printed form composed of the testimony of the witnesses, we of the Supreme Court, both by statute and by judicial decisions from the beginning of the Workmen's Compensation Law in this State in 1919, have no right to weigh this evidence, but we

must accept the finding of the trial court when based upon material evidence. There being material evidence to support the finding of the Chancellor here his decree must be affirmed.